*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0149a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FRANK G. SPISAK, JR.,

>    *Petitioner-Appellant,*

>    *v.*                                                    No. 03-4034

STUART HUDSON, Warden,

>    *Respondent-Appellee.*

---

Filed:  April 11, 2008

Before:  MARTIN, MOORE and CLAY, Circuit Judges.

---

## AMENDED ORDER

---

On October 20, 2006, this Court issued an opinion partially granting habeas relief to Petitioner, Frank G. Spisak, and ordering a new mitigation phase trial. *Spisak v. Mitchell*, 465 F.3d 684 (6th Cir. 2006).  Specifically, this Court found that Spisak received ineffective assistance of counsel and that the jury instructions at the penalty phase of Spisak's trial unconstitutionally required the jury to be unanimous in its findings with respect to mitigating evidence. Respondent warden thereafter filed a petition for writ of certiorari with the United States Supreme Court.  On October 9, 2007, the Supreme Court granted certiorari, vacated the judgment of this Court, and remanded the case to this Court for further consideration in light of *Carey v. Musladin*, 127 S.Ct. 649 (2006), and *Schriro v. Landrigan,* 127 S.Ct. 1933 (2007).  After careful review and consideration of *Musladin* and *Landrigan*, we find that neither of the cases require reversal of our prior disposition of this case.  Accordingly, we reinstate our opinion of October 20, 2006, partially granting habeas relief and ordering a new mitigation phase trial.

In *Spisak v. Mitchell*, 465 F.3d 684 (6th Cir. 2006), this Court partially granted habeas relief to Petitioner on two grounds.  First, this Court found that Petitioner was prejudiced by his counsel's deficient performance at the sentencing phase of Petitioner's trial inasmuch as counsel's closing argument focused almost entirely on the heinous nature of Petitioner's crimes and his deficient nature as a person.  Defense counsel in no way attempted to rehabilitate Petitioner in the eyes of the jurors who would eventually have to decide whether to recommend the death penalty.  There is no evidence in the record suggesting that Petitioner in any way contributed or consented to counsel's outrageous remarks during closing arguments.  Relying on Supreme Court precedent applying the standard for ineffective assistance of counsel, this Court reasoned that defense counsel's conduct was so deficient, prejudicial and indeed, egregious, that it "undermined the proper functioning of the adversarial process" such that "the trial cannot be relied upon as having produced the just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

1

Second, this Court found that Ohio's so-called "acquittal first" instruction impermissibly limited the jury's evaluation of mitigating evidence in violation of the Eighth Amendment. Relying on *Mills v. Maryland*, 486 U.S. 367 (1988) and *McKoy v. North Carolina*, 494 U.S. 433 (1990), we held that "[w]hile a trial court's sentencing phase instructions may require juror unanimity as to the results of the process of weighing aggravating circumstances and mitigating factors, the instructions cannot require unanimity as to the presence of a mitigating factor." *Spisak*, 465 F.3d at 708. At the sentencing phase of Petitioner's trial, the trial court instructed the jury that before a life sentence could be imposed, that it must find that the prosecution failed to prove that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. The trial court did not instruct the jury, however, that such a finding need not be unanimous. Moreover, the verdict form given to the jury reflected a unanimity requirement with respect to the finding that the mitigating factors outweigh the aggravating factors inasmuch as the form required twelve signatures before the jury could impose a life sentence. This, we found, impermissibly imposed a unanimity requirement on the jury's ability to find mitigating factors in violation of federal law as announced in *Mills* and *McKoy*.

Based on these two grounds, we found that Petitioner's conviction resulted from an unreasonable application of federal law as announced by the Supreme Court, and that Petitioner therefore overcame the high bar for habeas relief established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA");[1] consequently, we remanded for a new mitigation phase trial.

Upon review of *Musladin* and *Landrigan*, we find that they are readily distinguishable, and therefore Petitioner remains entitled to habeas relief as a result of the ineffective assistance of counsel at the mitigation phase of his trial and the "acquittal first" jury instruction.

In *Carey v. Musladin*, a habeas petitioner sought a writ of habeas corpus contending that he had been denied a fair trial after trial spectators wore buttons to the trial which displayed a picture of the murder victim. 127 S.Ct. at 651. A state court held that the display of buttons picturing the victim did not deny the defendant his right to a fair trial. *Id.* The Ninth Circuit Court of Appeals reversed, finding that the state court's decision was "contrary to or an unreasonable application of, clearly established federal law as determined by the Supreme Court." The Ninth Circuit applied *Estelle v. Williams*, 425 U.S. 501 (1976) (defendant forced to wear prison garb by the state denied right to a fair trial) and *Holbrook v. Flynn*, 475 U.S. 560 (1986) (finding that the seating of "four uniformed state troopers" in spectators row immediately behind defendant constituted the denial of the right to a fair trial) to find that the spectators' conduct was so inherently prejudicial that it denied the defendant his right to a fair trial. *Id.* at 652. The Supreme Court reversed, noting that whether spectator conduct, as opposed to state sponsored courtroom practices, could violate a defendant's constitutional right to a fair trial was "an open question in our jurisprudence." *Id.* at 654. Indeed, at the time *Musladin* was decided, courts across the country held divergent views on the application of *Williams* and *Flynn* to spectator conduct. *Id.* (collecting cases). Consequently, the failure of the state court to extend *Williams* and *Flynn* to spectator conduct was not an "unreasonable application" of "clearly established" federal law. *Id.*

In our view, *Musladin* is readily distinguishable from *Spisak*. First, *Musladin* is factually inapposite. *Musladin* involved a habeas petition alleging an infringement on the right to a fair trial based upon spectator conduct whereas *Spisak* alleged constitutionally ineffective assistance of

---

[1] Under AEDPA, an application for a writ of habeas corpus will not be granted unless the prior state proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States;" or (2) involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

counsel as a result of counsel's arguments to the jury and an impermissible "acquittal first" instruction at the penalty phase of Petitioner's trial.

Second, unlike *Musladin*, our holdings in *Spisak* did not address an undeveloped area of the law; rather, this Court's holdings partially granting habeas relief relied on well-settled Supreme Court precedent regarding ineffective assistance of counsel at the sentencing phase of trials, i.e., *Strickland v. Washington*, 466 U.S. 668 (1984) and *Wiggins v. Smith*, 539 U.S. 510 (2003) and the prohibition against unanimity standards with respect to the finding of mitigation factors, i.e., *Mills v. Maryland*, 486 U.S. 367 (1988) and *McKoy v. North Carolina*, 494 U.S. 433 (1990). Federal law regarding ineffective assistance of counsel and penalty phase jury instructions of the kind addressed in *Spisak* was therefore "clearly established."

Third, the fact that the Supreme Court has not squarely addressed a situation involving a counsel's deficient performance during closing arguments of the mitigation phase of a trial or the specific type of instruction given here does not preclude this Court's finding that the state court unreasonably applied federal law. Indeed, as the Supreme Court recently noted in *Panetti v. Quarterman*, 551 U.S. –, 127 S. Ct. 2842 (2007), "AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" *Id.* at 2858 (quoting *Musladin*, 127 S.Ct. at 656 (Kennedy, J., concurring)). Accordingly, we may find the application of a *principle* of federal law unreasonable despite the "involve[ment of] a set of facts 'different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Smith v. Patrick*, 508 F.3d 1256, 1259 (9th Cir. 2007) ("Habeas relief is appropriate under the 'unreasonable application' prong of section 2254(d)(1) when a state court violates the *principle* of clearly established federal law that has been determined by the Supreme Court . . . .") (emphasis original). Thus, this Court's holding in *Spisak* was consistent with the mandate of AEDPA that federal courts are not to disturb state court determinations unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Schriro v. Landrigan*, the Supreme Court considered whether a habeas petitioner presented a colorable claim of ineffective assistance of counsel. 127 S.Ct. at 1937. In *Landrigan*, the petitioner alleged that he received ineffective assistance of counsel after his lawyer failed to offer mitigating evidence at sentencing and did not adequately investigate mitigating evidence. *Id.* at 1938. The Supreme Court, however, disagreed. Applying the *Strickland* standard, the Court found that defense counsel's performance was neither deficient nor did it prejudice the petitioner. *Id.* at 1944. The Court found that the petitioner could not demonstrate that his counsel was deficient in failing to offer mitigating evidence at sentencing because the petitioner: (1) prohibited mitigation witnesses from testifying regarding his difficult upbringing and family history of substance abuse; (2) told the trial judge that no mitigating evidence existed; and (3) interfered with the presentation of mitigation evidence. *Id.* at 1941-42. The petitioner even told the sentencing court "I think if you want to give me the death penalty, just bring it right on. I'm ready for it." *Id.* at 1943. Additionally, the Court found that the petitioner could not demonstrate prejudice as a result of defense counsel's failure to further investigate mitigating evidence. The Court noted that the mitigating evidence that would have been discovered was "weak" in comparison to the overwhelming aggravating evidence and duplicative of the evidence that the petitioner had instructed counsel not to introduce regarding his family history. *Id.* at 1944. Consequently, the petitioner was denied habeas relief as he could not make out a colorable claim of ineffective assistance of counsel.

In *Spisak*, however, the story is quite different. Unlike *Landrigan*, Defense counsel in *Spisak* was clearly deficient inasmuch as he described Petitioner as "undeserving of sympathy" and "demented." The evidence on the record demonstrates that counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. For example, during his closing argument at the mitigation phase of trial, counsel engaged in a "graphic

and overly descriptive recounting of Defendant's crimes . . . ." *Spisak*, 465 F.3d at 705. Unlike *Landrigan*, there is no evidence that Petitioner consented to this line of argumentation or prevented counsel from presenting a more persuasive case for leniency. Rather, it appears that counsel independently pursued this course of conduct and left Petitioner to suffer the consequences of the prejudicial remarks. Indeed, the prejudice that occurred in this case is quite stark. Certainly, it is one thing not to introduce mitigating evidence as in *Landrigan*, but it is quite another to lend credence to the aggravating evidence presented by the prosecution by essentially describing one's own client as a monster. We remain convinced that had Spisak's counsel not demonized Spisak in his arguments to the jury, there is a reasonable probability that at least one juror would have had a different opinion of the proper outcome in this case.

For the reasons stated above, we reinstate our previous opinion in this matter, *Spisak v. Mitchell*, 465 F.3d 684 (6th Cir. 2006), and remand Petitioner's case to the district court for further proceedings consistent with our previous disposition.

**IT IS SO ORDERED**.

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I concur in the majority order reinstating the opinion of October 20, 2006, but again dissent as to Issue 1 and reinstate my prior opinion as well. In *Panetti v. Quarterman*, 551 U.S. –, 127 S. Ct. 2842 (2007), the Supreme Court clarified its holdings in *Schriro v. Landrigan*, 550 U.S. –, 127 S. Ct. 1933 (2007), and *Carey v. Musladin*, 549 U.S. –, 127 S. Ct. 649 (2006). *Panetti* solidifies my position in this case by clearly stating that "AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" *Panetti*, 127 S. Ct. at 2858 (quoting *Musladin*, 127 S. Ct. at 656 (Kennedy, J., concurring)). "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). A recent Ninth Circuit decision (generated after the Supreme Court vacated and remanded a case for it to address the effect (if any) of *Musladin*) noted, after citing *Panetti*, that "[h]abeas relief is appropriate under the 'unreasonable application' prong of section 2254(d)(1) when a state court violates the *principle* of clearly-established federal law that has been determined by the Supreme Court." *Smith v. Patrick*, 503 F.3d 1256, 1259 (9th Cir. 2007) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). The constitutional principles derived from *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), and *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), not their specific facts, remain key in this case. Because Spisak's entire defense centered on his alleged insanity, the Supreme Court of Ohio's decision not to allow evidence critical to this defense (and its refusal to submit the insanity defense to the jury) violated his right, clearly established in *Chambers* and *Crane*, to present evidence essential to his defense. Therefore, once again, I respectfully dissent from the majority's treatment of Spisak's insanity defense, and I reinstate my dissent.


ENTERED BY ORDER OF THE COURT


/s/ Leonard Green
_____
Clerk