*72 Justice Thomas
delivered the opinion of the Court.
This Court has recognized that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial. Estelle v. Williams, 425 U. S. 501, 503-506 (1976); Holbrook v. Flynn, 475 U. S. 560, 568 (1986). In this case, a state court held that buttons displaying the victim’s image worn by the victim’s family during respondent’s trial did not deny respondent his right to a fair trial. We must decide whether that holding was contrary to or an unreasonable application of clearly established federal law, as determined by this Court. 28 U. S. C. § 2254(d)(1). We hold that it was not.
I
On May 13, 1994, respondent Mathew Musladin shot and killed Tom Studer outside the home of Musladin’s estranged wife, Pamela. At trial, Musladin admitted that he killed Studer but argued that he did so in self-defense. A California jury rejected Musladin’s self-defense argument and convicted him of first-degree murder and three related offenses.
During Musladin’s trial, several members of Studer’s family sat in the front row of the spectators’ gallery. On at least some of the trial’s 14 days, some members of Studer’s family wore buttons with a photo of Studer on them.[1] Prior to opening statements, Musladin’s counsel moved the court to order the Studer family not to wear the buttons during the trial. The court denied the motion, stating that it saw “no *73 possible prejudice to the defendant.” App. to Pet. for Cert. 74a.
Musladin appealed his conviction to the California Court of Appeal in 1997. He argued that the buttons deprived him of his Fourteenth Amendment and Sixth Amendment rights. At the outset of its analysis, the Court of Appeal stated that Musladin had to show actual or inherent prejudice to succeed on his claim and cited Flynn, supra, at 570, as providing the test for inherent prejudice. The Court of Appeal, quoting part of Flynn’s test, made clear that it “considered] the wearing of photographs of victims in a courtroom to be an ‘impermissible factor coming into play,’ the practice of which should be discouraged.” App. to Pet. for Cert. 75a (quoting Flynn, supra, at 570). Nevertheless, the court concluded, again quoting Flynn, supra, at 571, that the buttons had not “branded defendant ‘with an unmistakable mark of guilt’ in the eyes of the jurors” because “[t]he simple photograph of Tom Studer was unlikely to have been taken as a sign of anything other than the normal grief occasioned by the loss of [a] family member.” App. to Pet. for Cert. 75a.
At the conclusion of the state appellate process, Musladin filed an application for writ of habeas corpus in Federal District Court pursuant to § 2254. In his application, Musladin argued that the buttons were inherently prejudicial and that the California Court of Appeal erred by holding that the Studers’ wearing of the buttons did not deprive him of a fair trial. The District Court denied habeas relief but granted a certificate of appealability on the buttons issue.
The Court of Appeals for the Ninth Circuit reversed and remanded for issuance of the writ, finding that under § 2254 the state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” § 2254(d)(1). According to the Court of Appeals, this Court’s decisions in Williams and Flynn clearly established a rule of federal law applicable to Musladin’s case. Musladin v. *74 Lamarque, 427 F. 3d 653, 656-658 (2005). Specifically, the Court of Appeals cited its own precedent in support of its conclusion that Williams and Flynn clearly established the test for inherent prejudice applicable to spectators’ courtroom conduct. 427 F. 3d, at 657-658 (citing Norris v. Risley, 918 F. 2d 828 (CA9 1990)). The Court of Appeals held that the state court’s application of a test for inherent prejudice that differed from the one stated in Williams and Flynn “was contrary to clearly established federal law and constituted an unreasonable application of that law.” 427 F. 3d, at 659-660. The Court of Appeals denied rehearing en banc. 427 F. 3d 647 (2005). We granted certiorari, 547 U. S. 1069 (2006), and now vacate.
II
Under the Antiterrorism and Effective Death Penalty Act of 1996,110 Stat. 1219:
“(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
“(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U. S. C. §2254.
In Williams v. Taylor, 529 U. S. 362 (2000), we explained that “clearly established Federal law” in § 2254(d)(1) “refers to the holdings, as opposed to the dicta, of this Court’s decisions as of the time of the relevant state-court decision.” Id., at 412. Therefore, federal habeas relief may be granted here if the California Court of Appeal’s decision was contrary to or involved an unreasonable application of this Court’s applicable holdings.
*75 A
In Estelle v. Williams and Flynn, this Court addressed the effect of courtroom practices on defendants’ fair-trial rights. In Williams, the Court considered “whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws.” 425 U. S., at 502. The Court stated that “the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes,” id., at 512, but held that the defendant in that case had waived any objection to being tried in prison clothes by failing to object at trial, id., at 512-513.
In Flynn, the Court addressed whether seating “four uniformed state troopers” in the row of spectators’ seats immediately behind the defendant at trial denied the defendant his right to a fair trial. 475 U. S., at 562. The Court held that the presence of the troopers was not so inherently prejudicial that it denied the defendant a fair trial. Id., at 571. In reaching that holding, the Court stated that “the question must be . . . whether 'an unacceptable risk is presented of impermissible factors coming into play.’” Id., at 570 (quoting Williams, supra, at 505).
Both Williams and Flynn dealt with government-sponsored practices: In Williams, the State compelled the defendant to stand trial in prison clothes, and in Flynn, the State seated the troopers immediately behind the defendant. Moreover, in both cases, this Court noted that some practices are so inherently prejudicial that they must be justified by an “essential state” policy or interest. Williams, supra, at 505 (concluding that the practice “further[ed] no essential state policy”); Flynn, supra, at 568-569 (holding that the practice was not of the sort that had to be justified by an “essential state interest”).
*76 B
In contrast to state-sponsored courtroom practices, the effect on a defendant’s fair-trial rights of the spectator conduct to which Musladin objects is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial.[2] And although the Court articulated the test for inherent prejudice that applies to state conduct in Williams and Flynn, we have never applied that test to spectators’ conduct. Indeed, part of the legal test of Williams and Flynn — asking whether the practices furthered an essential state interest— suggests that those cases apply only to state-sponsored practices.
Reflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants’ spectator-conduct claims. Some courts have applied Williams and Flynn to spectators’ conduct. Norris v. Risley, supra, at 830-831 (applying Williams and Flynn to hold spectators’ buttons worn during a trial deprived the defendant of a fair trial); In re Woods, 154 Wash. 2d 400, 416-418, 114 P. 3d 607, 616-617 (2005) (applying Flynn but. concluding that ribbons worn by spectators did not prejudice the defendant). Other courts have declined to extend Williams and Flynn to spectators' conduct. Billings v. Polk, 441 F. 3d 238, 246-247 (CA4 2006) (“These precedents do not *77 clearly establish that a defendant’s right to a fair jury trial is violated whenever an article of clothing worn at trial arguably conveys a message about the matter before the jury”); Davis v. State, 223 S. W. 3d 466, 474-475 (Tex. App. 2006) (“Appellant does not cite any authority holding the display of this type of item by spectators creates inherent prejudice”). Other courts have distinguished Flynn on the facts. Pachl v. Zenon, 145 Ore. App. 350, 360, n. 1, 929 P. 2d 1088, 1093-1094, n. 1 (1996) (in banc). And still other courts have ruled on spectator-conduct claims without relying on, discussing, or distinguishing Williams or Flynn. Buckner v. State, 714 So. 2d 384, 388-389 (Fla. 1998) (per curiam); State v. Speed, 265 Kan. 26, 47-48, 961 P. 2d 13, 29-30 (1998); Nguyen v. State, 977 S. W. 2d 450,457 (Tex. App. 1998); Kenyon v. State, 58 Ark. App. 24, 33-35, 946 S. W. 2d 705, 710-711 (1997); State v. Nelson, 96-0883, pp. 9-10 (La. App. 12/17/97), 705 So. 2d 758, 763.
Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators’ courtroom conduct of the kind involved here, it cannot be said that the state court “unreasonably] applied] clearly established Federal law.” § 2254(d)(1). No holding of this Court required the California Court of Appeal to apply the test of Williams and Flynn to the spectators’ conduct here. Therefore, the state court’s decision was not contrary to or an unreasonable application of clearly established federal law.
III
The Court of Appeals improperly concluded that the California Court of Appeal’s decision was contrary to or an unreasonable application of clearly established federal law as determined by this Court. For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 The record contains little concrete information about the buttons. The buttons were apparently two to four inches in diameter and displayed only a photograph of Studer. It is not clear how many family members wore the buttons or how many days of the trial they wore them.

 This Court has considered cases in which the proceedings were a sham or were mob dominated. See Moore v. Dempsey, 261 U. S. 86, 91 (1923) (describing allegations that “the whole proceeding [was] a mask — that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong”); Frank v. Mangum, 237 U. S. 309, 324-325 (1915) (“[T]he disorder in and about the court-room during the trial and up to and at the reception of the verdict amounted to mob domination, that not only the jury but the presiding judge succumbed to it”).