MURPHY, Circuit Judge,
concurring in part and concurring in the result in part.
The majority opinion is a thorough and scholarly work. It offers a principled and persuasive analysis of how the Supreme Court’s recent decision in Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), affects federal court habeas review of state court decisions under the AEDPA. See Majority Op. at 1014-19. Under the majority’s post-Mus-ladin paradigm: (1) the term “clearly established Federal law, as determined by the Supreme Court of the United States” in 28 U.S.C. § 2254(d) is narrowly limited to Supreme Court holdings in cases “where the facts are at least closely-related or similar to” the facts of the petitioner’s case [1]; and (2) the absence of such clearly established law brings the inquiry to a close and the petitioner must be denied relief without undertaking an analysis of § 2254(d)’s “unreasonable application” prong.[2] As the majority recognizes, this reading of Musladin leaves little room for *1031 the “extension of legal principle” component of § 2254(d)’s unreasonable application prong, id. at 1017-19, and operates to overrule one of this court’s precedents, id. at 1018 (concluding Carter v. Ward, 347 F.3d 860, 864 (10th Cir.2003), is no longer good law post-Musladin). Applying this new post -Musladin paradigm, the majority concludes House’s equal protection claims must fail because the Supreme Court has never held that venue transfers are subject to scrutiny under the Equal Protection Clause. Majority Op. at 1020-23.
Although the majority’s construct is, as noted above, a principled reading of Mus-ladin, it seems inappropriate to definitively adopt such a construct in this case. First and foremost, the majority’s reworking of the applicable AEDPA standards of review does not come about on the basis of relevant and helpful briefing. Instead, it arises in a briefing vacuum as this case was fully briefed and orally argued several months before the Supreme Court decided Musladin. Furthermore, as highlighted by the absence from the majority opinion of citations to relevant case law, it does not appear there is much authority from other circuits addressing these important questions. Although the absence of briefing and helpful authorities might be less disconcerting if the correctness of the majority approach were without doubt, the majority’s reading of Musladin is not the only principled reading.[3] Most important *1032 ly, however, House’s equal protection claim fails even under this court’s precedent, Carter, 347 F.3d at 864, that the majority deems overruled by Musladin. Under § 2254(d)’s “unreasonable application” prong as interpreted in Carter, it was not unreasonable for the New Mexico state courts to conclude that making venue changes on the basis of racial composition of the trial venue implicates the Equal Protection Clause and to apply a modified Batson analysis to House’s claim.[4] Nor was the state courts’ application of that test to resolve House’s claims unreasonable.
In light of this unexceptional avenue for resolving House’s equal protections claims, especially when the availability of that avenue is coupled with the lack of briefing on the impact of Musladin, it seems unwise to use this case as a vehicle to rewrite the AEDPA standards of review in this circuit. For that reason, I do not join Sections II, III.A, or III.B of the majority opinion, but instead concur in the result as to House’s equal protection claims.
I perceive a different flaw in the majority’s resolution of House’s Sixth Amendment claims. See Majority Op. at 1022-27. Although House’s brief is anything but clear, he appears to be arguing that before a trial court can grant a change of venue on the basis of pretrial publicity, it must hold a hearing and try to empanel an impartial jury. The majority resolves this claim by concluding the state trial court, consistent with Supreme Court precedent, presumed the jury pool in Taos County was prejudiced because of pervasive pretrial publicity. Id. at 1023-25. The majority then moves on to conclude that the state courts’ factual findings regarding the existence of prejudicial pretrial publicity are not erroneous under the standard set out in 28 U.S.C. § 2254(e)(1). The problem with the majority’s approach is that it relies on case law that is only tangentially relevant to the actual claim presented.
In essence, House seems to be asserting that prior to granting any prosecution-initiated change in venue based on a claim of bias in the jury pool, a trial court must always attempt to seat a jury. He concludes it appropriate to change venue only if during the process of voir dire it appears the entire venire is tainted. House’s claim, then, is premised on some type of positive right flowing from the Sixth Amendment to be tried in Taos County, which right can only be overcome by a failed attempt to seat an impartial jury. One thing is clear: House is not asserting the jury that tried and convicted him was biased by a pervasive atmosphere of pretrial publicity. He is instead asserting the state trial court should not have granted a change of venue because the prosecution did not first prove the jury pool in Taos County was biased.
None of the cases cited by House and collected in the majority opinion remotely address this issue. Majority Op. at 1023-25. Instead, as explicitly noted in footnote twelve of the majority opinion, the cases relied on by House all address situations in which a trial court refused to transfer venue in an atmosphere allegedly corrupted by publicity. Id. at 1023 n. 12. Each of those cases addresses the type of showing a defendant must make to prevail on a Sixth Amendment claim based on the denial of an impartial jury. Most importantly for our purposes, however, none of those *1033 even suggest that an atmosphere corrupted by publicity is a prerequisite to a change in venue. None of the cases prohibit a trial court, in the exercise of its discretion, from prophylactically granting a change of venue based on the mere possibility that adverse pretrial publicity could pose an impediment to a fair trial. On that limited basis alone, I would affirm the district court’s denial of habeas relief on House’s Sixth Amendment claim.[5]
For those reasons set out above, I join Sections I, III.E, and III.F of the majority opinion and concur in the result in the remainder of the majority opinion, i.e., denial of relief as to House’s claims under the Equal Protection Clause and the Sixth Amendment.

. Compare Majority Op. at 1015-16 (“Prior to Musladin, the Supreme Court seemed more likely to draw clearly established federal law from general principles teased from precedent."), with id. at 1016 ("Thus, in the post-Musladin analysis, clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rale at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.”).

. Majority Op. at 1017 ("Musladin clarified that the threshold determination that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis. That is, without clearly established federal law, a federal habeas court need not assess whether a state court’s decision was 'contrary to' or involved an 'unreasonable application’ of such law.”).

. For instance, it may well be possible to read Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), as well as Wright v. Van Patten, - U.S. -, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (per curiam), as standing for a far more limited and mundane proposition: the established rules at play in those cases (government sponsored courtroom conduct in Musladin and the presumption of prejudice flowing from the complete absence of counsel in Wright) were sufficiently unlike the facts of the petitioners' cases (the conduct of victim family members in Musladin and telephonic appearance by counsel in Wright) so that the state courts' refusal to extend the relevant rules to the new situations was not unreasonable. See Spisak v. Hudson, 512 F.3d 852, 854 (6th Cir.2008) (interpreting Musladin in such a fashion). Such a reading is particularly viable given that the Supreme Court does not state in either Musladin or Wright that it is deviating from its past practices, announcing a new interpretation of § 2254(d), or resolving an important circuit split. See Majority Op. at 1017-18 (noting that prior to Musladin the Supreme Court precedents were unclear and the circuit courts were divided as to question of whether the absence of a factually similar Supreme Court decision ended the § 2254 analysis). Furthermore, in Panetti v. Quarterman, a case decided after Musladin but before Wright, the majority held as follows: "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner.” - U.S. -, 127 S.Ct. 2842, 2858-59, 168 L.Ed.2d 662 (2007) (quotation and citation omitted). In so holding, the Court specifically cited to Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the case the majority asserts was displaced by Musladin. Majority Op. at 1015-16. Thus, Panetti seems to indicate that in some cases courts should examine Supreme Court precedent at a higher level of abstraction in analyzing whether the state court applied "clearly established Federal law” in an unreasonable manner. That higher level of abstraction might well apply in cases where the facts are not as similar as the majority would require. Compare Majority Op. at 1022 ("Although we acknowledge the long line of Supreme Court cases that stand for the proposition that a state may not purposefully discriminate on the basis of race in jury selection procedures, we nonetheless must heed Musladin s teachings that restrict the scope of clearly established federal law to narrowly-defined Supreme Court holdings. To demonstrate that the law is clearly established, Mr. House must do more than identify a generalized legal principle.” (footnote omitted)), with Panetti, 127 S.Ct. at 2858 ("[AEDPA] recognizes ... *1032 that even a general standard may be applied in an unreasonable manner.'').

. That is not to say, however, that the state courts were compelled to undertake such an analysis. Instead, I simply note that such a course is not unreasonable.

. It is far from clear that House has presented his Equal Protection Clause and Sixth Amendment claims in discrete packages. Instead, it is possible to read House’s brief as asserting the trial court was required to question the jury pool in Taos County as a prophylactic measure to prevent the prosecution from using potential jury bias as an excuse for making a race-based request for a change of venue. Even so construed, House’s claim fails because the state court decision that such a prophylactic measure is not necessary to vindicate House’s right to equal protection is neither contrary to nor an unreasonable application of Batson.