HOLLOWAY, J.,
dissenting:
I must respectfully dissent. I am persuaded that trial counsel for Mr. Tomlin provided ineffective assistance at the critical point in the (first) trial when the judge read to the parties and counsel the jury note that indicated unambiguously that the jury had reached a unanimous decision to acquit Mr. Tomlin of the charge of first degree rape. Moreover, I am concerned that one of the flaws in the majority’s reasoning is an especially consequential one which imposes on Mr. Tomlin a much heavier burden than is required or justified by the AEDPA and Supreme Court precedent. I shall briefly explain the reasons for my views.
I
The serious error of trial counsel was consenting to the mistrial in the first case, which left Mr. Tomlin exposed to a second trial on the charge of rape with the result that he was convicted and sentenced to almost 28 years’ imprisonment for that offense. Nine days after the first jury had been discharged, trial counsel moved for a judgment of acquittal based on the jury’s determination as reflected in the note. But that was too late because he had consented to the mistrial and it was no longer possible to poll the jurors to determine that their decision on the rape charge had indeed been final.
The issue then is whether it was objectively unreasonable for counsel to fail to realize the double jeopardy implications of the jury note indicating acquittal on the greater charge of rape and that Tomlin’s double jeopardy protection would be waived unless the motion for mistrial were withdrawn, so that Tomlin’s claim would pass muster under the first prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In deciding that issue, it is not necessary to have a Supreme Court case directly on point as to partial verdicts and double jeopardy. Of course, the prevailing law on these points is the necessary context for determination of the issue, but it is not necessary that the controlling law be expressed in a Supreme Court holding that would itself qualify as well settled law under AEDPA.[1]
*602 Stñckland defines the test for claims of ineffective assistance of counsel. The Supreme Court applies a general standard for attorney performance in all ineffective assistance cases. The Sixth Amendment right to the effective assistance of counsel is independent of any other right that may be implicated. See, e.g., Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (Fourth Amendment claim and Sixth Amendment claim for ineffectiveness with respect to a Fourth Amendment claim “have separate identities and reflect different constitutional values”). Indeed, there need not be a separate underlying constitutional right at all. See Glover v. United States, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (considering prejudice in ineffectiveness claim based on counsel’s failure to press grouping argument under the sentencing guidelines). It is the law of ineffective assistance that must be clearly established. And Strickland provides the test for ineffective-assistance claims.
There was thus “clearly established federal law as determined by the Supreme Court.” 28 U.S.C. § 2254(d)(1). Under that law, counsel’s performance is assessed for “reasonableness under prevailing professional norms.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. This court should determine whether the state court’s determination that there was not deficient performance was an objectively unreasonable application of Stñckland.
The significant analytical error in the majority opinion is the holding that Tomlin’s claim of ineffective assistance must fail because the case on which he relies to show that his counsel’s performance was inadequate, Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), supports his argument only in dicta. The controlling Supreme Court precedent is Stñckland. The petitioner should not be required to satisfy AEDPA twice as the majority opinion requires him to do.
To require factual symmetry between a petitioner’s claims and Supreme Court precedent in cases of ineffective assistance of counsel is inconsistent with well-established Supreme Court precedent. “It is past question that the rule set forth in Strickland qualifies as clearly established Federal law, as determined by the Supreme Court of the United States.” Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quotation omitted). The need to apply the general principles set out in Stñckland to varying fact patterns does not affect the conclusion that Stñckland constitutes clearly established law. Williams, 529 *603 U.S. at 391, 120 S.Ct. 1495 (“That the Strickland, test of necessity requires a case-by-case examination of the evidence, obviates neither the clarity of the rule nor the extent to which the rule must be seen as established by this Court.” (quotations omitted)).
The proper approach is found in Williams. In finding that the petitioner in that case had shown that his trial counsel rendered ineffective assistance during the penalty phase of that death case, the Court assessed counsel’s performance using ABA standards to determine how a reasonably competent lawyer would have performed. There is nothing in Williams to support the notion that another Supreme Court holding on closely analogous facts is necessary before the lawyer’s performance could be held ineffective.
Very recently in Panetti v. Quarterman, — U.S.-, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the Court cited Williams in identifying the Strickland test as a “general standard” whose application is not dependent on identification of a factually similar case. The Supreme Court explained:
That the standard is stated in general terms does not mean the application was reasonable. AEDPA does not “require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.” Carey v. Musladin, 549 U.S. 70 [81], 127 S.Ct. 649, 656, 166 L.Ed.2d 482, (2006) (slip op., at 2) (Kennedy, J., concurring in judgment). Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts “different from those of the case in which the principle was announced.” Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The statute recognizes, to the contrary that even a general standard may be applied in an unreasonable manner. See, e.g., Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (finding a state-court decision both contrary to and involving an unreasonable application of the standai’d set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
Panetti, 127 S.Ct. at 2858.
Even if Panetti did not exist, the panel decision would still conflict with Williams. “It is past question,” the Court said in Williams, “that the rule set forth in Strickland qualifies as ‘clearly established Federal law, as determined by the Supreme Court of the United States.’ ” 529 U.S. at 391, 120 S.Ct. 1495 (quoting 28 U.S.C. § 2254(d)(1)). And the Court explained that the need to apply the general principles of Strickland to varying fact patterns did nothing to change this: “That the Strickland test ‘of necessity requires a case-by-case examination of the evidence,’ obviates neither the clarity of the rule nor the extent to which the rule must be seen as ‘established’ by this Court.” Id. (quoting Wright v. West, 505 U.S. 277, 308, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring in the judgment)).
In holding there was no clearly established federal law with respect to Tomlin’s claim of ineffective assistance of counsel because there existed no factually symmetrical Supreme Court decision, the majority announces a decision that directly conflicts with Williams. By requiring nearly perfect factual symmetry between a petitioner’s case and a Supreme Court case before the petitioner is entitled to habeas relief on a claim of ineffective assistance, the majority’s holding has the effect of converting every habeas petition into a distinct “class of one.” Smith v. Patrick, 508 F.3d 1256, 1259 (9th Cir.2007). The result is a nearly toothless and empty review of claims of ineffective assistance. Id.
*604 II
I turn now to the reasons why Tomlin’s claim was properly held by the district judge to satisfy the first and second prongs of Strickland. The majority’s rejection of the district judge’s analysis is clearly wrong in my judgment. I am convinced that the district judge was correct in concluding that Tomlin has shown that counsel’s performance fell below the objective standard we must apply and that, but for counsel’s error, there is a reasonable probability that the result would have been different. See Strickland, 466 U.S. at 687-88, 694, 104 S.Ct. 2052. More to the point, I agree with the district judge that the state court’s application of Strickland was unreasonable.
Although I emphasize in Part I, supra, that Tomlin should not be required to show that his counsel overlooked a controlling Supreme Court precedent on “partial verdicts” and double jeopardy in order to show that the attorney’s performance was objectively unreasonable (because Strickland is the relevant Supreme Court precedent), some standard is of course necessary to an assessment of the objective reasonableness of counsel’s performance. The district judge was clearly correct in holding that trial counsel should have considered the double jeopardy implications of the purported state rule against partial verdicts. With the focus on the jury note saying that the jurors had reached the conclusion by a unanimous vote that Tomlin was not guilty of rape, I conclude that it a reasonably effective attorney would have realized that steps had to be taken to reap the benefit of that jury decision and to spare Mr. Tomlin from being tried a second time on that charge. A reasonably effective attorney would have known that double jeopardy rights were at stake, that a mistrial followed by a re-trial does not infringe on double jeopardy protections where the mistrial is justified by manifest necessity, and would have comprehended that manifest necessity was not present as to the charge of first degree rape, ie., the jury had been able to reach a verdict on that charge. To do nothing, which is what trial counsel in actuality did, is professionally unacceptable.
The trial lawyer’s error here was not a tactical decision. This is clearly shown by the fact that counsel did move for a judgment of acquittal based on the jury note, but only did so days later, after the jury had been discharged and it was too late.
The norms of professional conduct required that counsel take all reasonable steps to protect his client, which in the circumstances presented means that an effort was required to take advantage of the jury’s apparent unanimous decision to acquit on the most serious charge Tomlin faced. At the least, the attorney should have urged the court to poll the jury to determine if there was any lingering doubt about the note. The state court’s holding that it was reasonable for counsel to do nothing because some counter-arguments based on state law were available to the prosecution is utterly unpersuasive to me.
I also believe that Tomlin meets the second prong of Strickland, that he has shown that there is a reasonable probability that, but for counsel’s error, the results of the proceeding would have been different. The state court did not reach this issue, so our review is de novo. To this point in this discussion I have assumed that the jury’s decision was final. But to decide Tomlin’s claim under the second prong of Strickland, it is necessary to examine that assumption.
I certainly detect no hint from the note that the jurors’ views on the rape charge were tentative or that their consideration of that charge was incomplete. I recognize the possibility that, if polled, one or *605 more jurors might have responded that their vote on the rape charge had been provisional, dependent on a unanimous conviction of the lesser charge perhaps. This is, of course, an inquiry in which absolute certainty is not possible. I conclude that the likelihood is very high that if polled the jurors would have said, as the note indicates, that the decision was final. In my view, this likelihood is sufficiently great to support holding for Tomlin on the second prong of Strickland. In other words, I believe that there is a reasonable probability that the outcome of the proceeding would have been different.
I would affirm the judgment of the district court.

. Most of the focus on state law in the majority opinion and the parties’ briefs seems to me to be misplaced. I think it of little consequence whether the Kansas rule on "partial verdicts” is well established. The issue underlying Tomlin's ineffective assistance claim instead is whether application of that rule in this case violated Tomlin's federal constitutional protection against double jeopardy.
*602 It is nevertheless interesting to note, and perhaps of some consequence when the prejudice prong of Strickland is reached, that the state court’s rejection of Tomlin’s arguments does not show an impregnable barrier. In a case analogous to this one, the Kansas Court of Appeals indicated that it might have been constitutional ineffectiveness for a lawyer to fail to move for an acquittal based on a "partial verdict.” That case was Long v. State, 87 P.3d 375 (table), 2004 WL 794430 (Kan.Ct. App.2004), which considered a double jeopardy claim where a mistrial had been declared after the jury had sent a note saying that they were "0-12” on one of the counts. Because it was not clear whether the vote was for conviction or acquittal, the appellate court remanded the matter for trial court findings. In its opinion, the state appellate court said that if the jury had reached a unanimous verdict of acquittal “trial counsel might well have been constitutionally ineffective if the attorney made no attempt to obtain a judgment of acquittal on that count or ... failed to object to the subsequent prosecution on that count."
Further, on direct appeal of Mr. Tomlin’s conviction, the Kansas Court of Appeals did not mention any prohibition on partial verdicts but merely said that counsel should have made the motion before the jury had been discharged so that the trial judge could have determined if the jurors had indeed reached a final decision on the rape count.