PATRICK E. HIGGINBOTHAM, Circuit Judge,
dissenting:
Carlos Poree suffers from. Schizophrenia. In 1977, he went on a shooting spree, killing one person. He was ultimately adjudicated not guilty by reason of insanity and was civilly committed to the Eastern Louisiana Mental Health System (ELMHS). Now, forty years after his horrific act, the doctors who know Poree best agree that he is fit for conditional release from ELMHS to Harmony House, a secure facility with continued treatment but increased privileges. One doctor described Poree as a “model patient.” Another opined that he would comply with all conditions at Harmony House. A third indicated Poree’s advancing age mitigates the risk of violent behavior. Against the unanimous recommendation of all who testified, including the state doctors, the state' court denied the request for transfer. Poree petitioned for habeas relief.
• The Supreme Court has clearly established the precondition of dangerousness for continued civil confinement of insanity acquittees. The state court, however, relied on a standard of potential dangerousness, *252 stripping the dangerousness precondition of meaning. For this reason, the state court’s decision was contrary to clearly established Supreme Court law. The majority holds differently, so I dissent.
Together, the touchstone cases of Jones v. United States[1] and Foucha v. Louisiana [2] established standards for the release of insanity acquittees.[3] I agree with the majority that “the governing legal principle derived from Foucha and Jones is that a state may continue to confíne an insanity acquittee only as long as the acquittee is both mentally ill and dangerous.” As the majority acknowledges, this means it is “clearly established that a finding of dangerousness is one of two prerequisites to continued civil confinement.”
The state court made no finding of dangerousness. Instead, it made a finding of potential dangerousness. What at first blush seems like an innocuous, semantic difference is actually a potent one: the state court’s potentially dangerous standard renders the Supreme Court’s dangerousness requirement meaningless. “Potential” means merely “[cjapable of coming into being; possible.”[4] But because it is possible for every insanity acquittee to become dangerous, the state court’s standard lacks any limit. Although the Supreme Court has not explicitly decided how dangerousness may be determined, the dangerousness standard has a constitutional floor that a standard of potential dangerousness fails to reach.
Under the state court’s standard, the state must only prove that the possibility exists for someone to become dangerous. This understanding of the dangerousness requirement lowers the bar to the point of conflicting with the clearly established law of Foucha and Jones.[5] In relying on a standard of potential dangerousness, the state court “applie[d] a rule different from the governing law set forth in” those cases.[6]
The majority opinion makes three missteps. First, it relies heavily on the Supreme Court’s use of the term “potential dangerousness” without analyzing the context. The Supreme Court in Jones at one point stated: “The purpose of commitment following an insanity acquittal ... is to treat the individual’s mental illness and protect him and society from his potential dangerousness.”[7] Jones thus uses “potential dangerousness” not to describe the standard for assessing dangerousness—the issue in this case—but to state a purpose of civilly committing insanity acquittees in the first place. We know this because the Court’s very next sentence is that “[t]he *253 committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous.”[8] The Court’s mere use of the term “potential dangerousness” in a context distinct from the dangerousness assessment does not detract from the commonsense conclusion that the dangerousness assessment must have meaning.
Second, throughout its opinion, the majority uses words like “predictive” and “probability” in reference to the dangerousness finding. For instance, it highlights that the Court in Jones found the dangerousness inquiry to be “predictive in nature” and “inherently predictive.” It notes the lack of “any yardstick for determining what probability of danger is sufficient”[9] and explains that Louisiana law “limits the probability of danger necessary to justify continued confinement.”[10] Importantly, the state court did not apply a standard of “predictive” dangerousness or “probable” dangerousness, it applied one of potential dangerousness. This matters because those modifiers have different meanings. Predict means “to declare or indicate in advance; especially” and to “foretell on the basis of observation, experience, or scientific reason.” [11] Probable means “supported by evidence strong enough to establish presumption but not proof’ and “likely to be or become true or real.”[12] “Potential,” on the other hand, means “possible.”[13] Predictive and probable cabin the dangerousness requirement in a more, meaningful way than potential does, but whether a court can take predictions and probabilities of danger into account is not before us. The state court did not do so.
The majority’s final misstep is its. application of the “contrary to .,. clearly established Federal law” standard.[14] There are'two steps in this case’s § 2254(d)(1) analysis: first, we must identify the clearly established law; and second, we must ask whether the state court decision was contrary to it.[15] At step one, the majority agrees that it is “clearly established that a •finding of dangerousness is one of two prerequisites to continued civil confinement,” At step two, the question is whether the state court decision was contrary to this clearly established law. That is, did the state court “reach[ ] a legal conclusion in direct conflict with a prior decision of the Supreme Court”[16] or “appl[y] a rule differently] from the governing law set forth in [Supreme Court] cases”?[17]
Instead of analyzing this issue, the, majority reverts to the clearly established law question—a question it already answered—to conclude that the Supreme Court has not clearly established that what the state court did was incorrect.[18] Bring *254 ing to mind the Supreme Court’s recent statements on “clearly established law” in the qualified immunity context,[19] the majority answers whether the state court’s analysis was clearly established as improper, instead of answering whether the state court’s decision was contrary to the clearly established law it previously identified.
In the § 2254(d) context, “ ‘clearly established Federal law’ ... is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.”[20] Moreover, it “ ‘refers to the holdings, as opposed to the dicta, of [the Supreme] Court’s decisions [21] In Foucha, the Court explained its holding in Jones: “[w]e held ... that ‘(t)he committed acquittee is entitled to release when he -has recovered his sanity or is no longer dangerous,’ ie., the acquittee may be held as long as he is both mentally ill and dangerous, but no longer.”[22] The majority concludes that this means it is “clearly established that a finding of dangerousness is one of two prerequisites 'to continued civil confinement.” Even the State agrees that “a showing of dangerousness was necessary in order to justify Poree’s continued commitment.” With the threshold question of identifying the clearly established law answered, the remaining question is whether the state court’s decision was contrary to it. The majority largely avoids this analysis.
Because the state court’s standard of potential dangerousness strips the dangerousness precondition of meaning, I would find that the state court’s decision was contrary to clearly established Supreme Court law. Civil confinement is not punitive. It may not be used to accomplish what the criminal system could not—here, a life sentence. The systems are distinct in both justification and operation. They will remain so only if courts are faithful to the requirements of continued civil confinement. The state court decision went beyond those bounds in direct conflict with Supreme Court law. I dissent.

. 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983).

. 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed,2d 437 (1992),

. As stated in Foucha, " ‘(t)he committed ac-quittee is entitled to release when he has recovered his sanity or is no longer dangerous,' i.e., the acquittee may be held as long as he is both mentally ill and dangerous, but no longer.” 504 U.S. at 77, 112 S.Ct. 1780 (quoting Jones, 463 U.S. at 368, 103 S.Ct. 3043).

. Black's Law Dictionary (9th ed. 2009); accord Merriam-Webster Dictionary (online ed.), available at http://www.merriam-webster.com (last visited July 27, 2017) (defining potential as, inter alia, "existing in possibility; capable of development into actuality.”).

. See Gray v. Epps, 616 F,3d 436, 439 (5th Cir. 2010) ("A state court’s decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court ...” (citation omitted)).

. Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citation omitted).

. 463 U.S. at 368, 103 S.Ct. 3043.

. Id. (emphasis added) (citations omitted).

. Emphasis added.

. Emphasis added.

. Merriam-Webster Dictionary (online ed.), available at http://www.merriam-webster.com (last visited July 27, 2017).

. Merriam-Webster Dictionary (online ed.), available at http://www.merriam-webster.com (last visited July 27, 2017).

. Black’s Law Dictionary (9th ed. 2009).

. 28 U.S.C. § 2254(d)(1).

. See Marshall v. Rodgers, 569 U.S. 58, 133 S.Ct. 1446, 1449, 185 L.Ed.2d 540 (2013) (per curiam) (“The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner’s claims.” (citations omitted)).

. Gray, 616 F.3d at 439 (citation omitted).

. Bell, 535 U.S. at 694, 122 S.Ct. 1843 (citation omitted).

. For example, the majority reasons that "the Supreme Court has not clearly established that a finding of ‘potential’ dangerous *254 ness is insufficient to justify the continuing confinement of an NGBRI acquittee.” Similarly, it reasons that “it is not clearly established that a court’s finding of 'potential' dangerousness, coupled with a finding of mental illness, is insufficient to justify continued confinement.”

. E.g., Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) ("The .dispositive question is 'whether the violative nature of particular conduct is clearly established.’ ” (citation omitted)).

. Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citations omitted).

. Carey v. Musladin, 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

. 504 U.S. at 77, 112 S.Ct. 1780 (quoting Jones, 463 U.S. at 368, 103 S.Ct. 3043).