J. S70005/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MELVIN IRVIN DAVIS, | : | No. 497 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 22, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0015706-2013

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 07, 2019**

Melvin Irvin Davis appeals from the August 22, 2016 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his convictions in a jury trial of unlawful contact with minor (relating to sexual offenses), corruption of minors, indecent assault (complainant less than 13 years of age), and rape of a child.[1] The trial court imposed an aggregate sentence of 25 to 50 years of imprisonment. We affirm.

The trial court set forth the following:

> Complainant, A.G., lived with her mother and sister . . . in Philadelphia, Pennsylvania. At that time, A.G. was 9 and 10 years old. Because the home was located close to West Mill Creek Playground, A.G.

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 6301(a)(1)(ii), 3126(a)(7), and 3121(c), respectively.

went there almost every day to play with her friends. While playing at the park, A.G. met a girl named [A.], who was [appellant's] niece. [A.] invited A.G. to [appellant's] house on Parrish Street, which is also located near the park. While [A.] was upstairs using the bathroom, [appellant] told A.G. she was pretty, then approached A.G. and pulled down her pants; she asked him to stop and [appellant] said no. He then proceeded to pull down her underwear and licked her "private part." A.G. stated that she had contact with [appellant] on several occasions, and that she was inside of his Parrish Street residence during many of those times.

Following that incident and on several other occasions, [appellant] gave A.G. money after performing oral sex on her. [Appellant] only gave money to her after he licked her private part. A.G. also testified that [appellant] penetrated her with his penis on several occasions. In one instance, A.G. was sitting on the couch, at which point [appellant] pulled down her pants and her underwear, then penetrated her with his penis while saying "oohs and aahs." She testified that [appellant] also used his fingers to penetrate her vagina, and that it was "really scary" and hurt her. She stated that this occurred more than one time. Finally, A.G. testified that [appellant] gave her money several times after "licking [her] private parts.["] However, A.G. did not tell anyone about [appellant's] behavior, as he threatened that that [sic] if she were to tell anyone, he would kill her family.

Trial court opinion, 12/21/17 at 2-3 (record citations omitted; some brackets in original).

Following appellant's convictions,

[s]entencing was deferred for the preparation of a Mental Health Report, presentence investigation report ("PSI") and a report by the Sex Offenders Assessment Board ("SOAB report"). On August 22, 2016, [appellant] filed a motion for Extraordinary

Relief and a motion to vacate the child advocate. Both motions were denied. On that same date, [appellant] was sentenced to 20-40 years for Rape of a Child to be served consecutively with 5-10 years for Unlawful Contact With a Minor. [Appellant] was also sentenced to 3 ½ to 7 years for Corruption of Minors and Indecent Assault.[2] On September 1, 2016, [appellant] filed a Post-Sentence Motion. The motion was denied by operation of law on January 3, 2017. On February 1, 2017, [appellant] filed a timely notice of appeal. On June 9, 2017, the [trial] court issued an order pursuant to Pa.R.A.P. 1925(b) directing counsel to file a Statement of Matters within twenty-one days from the date of the order. [Appellant] filed a 1925(b) statement on June 27, 2017.

*Id.* at 1-2 (record citations omitted).

Appellant raises the following issues for our review:

[1.] Did not the trial court err and abuse its discretion when it denied [appellant's] motion for mistrial, in violation of his rights to due process and a fair jury trial under the state and federal constitutions, when it was discovered during jury deliberations that spectators had coached a child complaining witness during her testimony, as such misconduct was prejudicial and was not discovered by parties until after the close of trial, thus preventing effective remedy such as complete cross-examination?

[2.] Did not the trial court err and abuse its discretion when it replaced juror number twelve with an alternate juror after deliberations had begun where evidence was insufficient to establish that juror number twelve could not fulfill his duties and the trial court failed to thoroughly question the

---

[2] The record reflects that the sentences imposed for the unlawful contact with minor and corruption of minors convictions were to run concurrently with the consecutive sentences.

> alternate or to properly instruct the reconstituted jury, thereby further prejudicing [appellant] and violating his rights to due process and a fair jury trial?

Appellant's brief at 3.

> With regard to the denial of mistrials, the following standards govern our review:

> > In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-878 (Pa.Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted). "The remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'" *Id.* at 878 (citations omitted).

> To obtain relief on a claim that the trial court abused its discretion in responding to spectator conduct at trial, appellant must show that the spectator's actions caused actual prejudice or were inherently prejudicial. ***Commonwealth v. Philistin***, 565 Pa. 455, 774 A.2d 741, 743 (Pa. 2001); ***see Carey v. Musladin***, 549 U.S. 70, 73, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). The U.S. Supreme Court has held it is still an open question as to whether spectator versus state conduct can be inherently prejudicial. ***Carey***, 549 U.S. at 76 (citing ***Holbrook v. Flynn***, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)). The trial court has discretion to determine whether a party was prejudiced by a spectator's conduct. ***Philistin***, 774 A.2d at 743; ***Commonwealth v. Bracey***, 541 Pa. 322, 662 A.2d 1062, 1072 (Pa. 1995). The trial court may implement any appropriate remedy requested, including offering a remedial instruction, removing the responsible spectator, or declaring a mistrial. ***See***, ***e.g.***, ***Bracey***, 662 A.2d at 1072; ***Commonwealth v. Johnson***, 542 Pa. 384, 668 A.2d 97, 104-05 (Pa. 1995); ***Commonwealth v. Styles***, 494 Pa. 524, 431 A.2d 978, 980-81 (Pa. 1981). "[U]nless the unavoidable effect of the incident is to deny the defendant a fair trial, there is no error." ***Philistin***, 774 A.2d at 743; ***Johnson***, 668 A.2d at 104.

***Commonwealth v. Sanchez***, 36 A.3d 24, 47 (Pa. 2011).

Furthermore, the law does not presume that spectator conduct is inherently and irremediably prejudicial. ***Id.*** An appellant must develop factual or legal support in favor of a finding of actual prejudice. ***See id.***

Appellant first complains that the trial court abused its discretion in denying its motion for a mistrial when, during jury deliberations, it was discovered that four jurors observed spectators "coaching" A.G. during her testimony and, according to appellant, a mistrial was required because "it

was too late for the defense to effectively combat such misconduct through cross-examination or argument, or even for the [trial court] to offer [an] effective curative instruction." (Appellant's brief at 12.)

The record reflects that during deliberations, the jury submitted the following question: "Are we to consider the reactions of members of the audience?" (Notes of testimony, 5/3/16 at 78.) The trial court's answer to the question was, "No." (*Id.*) The jury later submitted the following: "It was observed by members of the jury that members of the audience were coaching [A.G.] during her testimony. That's why we want to know if their reactions are to be considered." (*Id.* at 93-94.) Appellant then moved for a mistrial, which the trial court denied. (*Id.* at 94.) The trial court then summoned the foreperson, Juror No. 6, into chambers because the trial court saw the:

> need to ascertain what they're referring to. Because someone could be making a face that has nothing to do with -- remember, there were people in this audience that had nothing to do with this case, nothing, that were audience [sic], and they may have reacted to something because of what they heard, and that could be perceived that way. So that's what I'm saying. We need to see what they're talking about before we jump ahead of ourselves and conclude that it's coaching when it could be a reaction, something they saw in the audience from people who have nothing to do with anything.

*Id.* at 97.

When the foreperson arrived in chambers, the following colloquy took place:

- 6 -

THE COURT: Concerning Question No. 4, it was observed by members of the jury that members of the audience were coaching [A.G.] during her testimony, that's why we want to know if her reactions are to be considered, now, what are you referring to?

JURY FOREPERSON: A couple members of the jury said they saw whoever was sitting in the audience --

THE COURT: Who in the audience, like on what side?

JURY FOREPERSON: Wherever that group was that was sitting back in the audience while [A.G.] was testifying, they were, like, nodding to her or trying to coach her in some kind of way.

THE COURT: Well, how -- that's what we're trying to get at. What did you observe?

JURY FOREPERSON: I didn't observe it.

THE COURT: You didn't observe it?

JURY FOREPERSON: No, a couple other members.

THE COURT: So you didn't see anything?

JURY FOREPERSON: I did not.

THE COURT: Okay.

JURY FOREPERSON: And a lot of us did not. We were focused on the witness.

THE COURT: Okay. Without saying -- do you know what numbers, who observed --

JURY FOREPERSON: No, because we're not sitting in order. We're just sitting around the table throwing things back and forth.

> THE COURT: Okay. But you're saying you didn't observe anything?
>
> JURY FOREPERSON: I did not.

*Id.* at 99-100.

The trial court then excused the jury foreperson, summoned each juror into chambers individually, and asked each juror whether he or she had observed any behavior from the audience. (*Id.* at 101-109.) In addition to the foreperson (Juror No. 6), Juror Nos. 2, 3, 4, 5, 8, 10, and 11 answered in the negative. (*Id.* at 99-108.)

Juror No. 1 responded that he or she had observed "three people that walked out with [A.G.]" who were shaking their heads at A.G. during her testimony. (*Id.* at 102.) When the trial court asked whether that observation would affect Juror No. 1's ability to be fair and impartial, Juror No. 1 stated that he or she was "still considering everything" and that the observation was not "making or breaking my decision." (*Id.* at 103.)

Juror No. 7 responded that he or she saw two women "smiling and nodding" during A.G.'s testimony. (*Id.* at 105.) Juror No. 7 further stated that his or her observation would not affect the juror's ability to be fair and impartial. (*Id.*)

Juror No. 9 responded that he or she noticed "some people just, like, nodding their head and smiling" during [A.G.'s] testimony and that it "could have been just, like, reassuring." (*Id.* at 106.) Juror No. 9 stated that what

he or she observed would not affect the juror's ability to be fair and impartial. (*Id.* at 106-107.)

Juror No. 12 responded that he[3] saw "two ladies" that were "shaking their head[s]" during [A.G.'s] testimony. (*Id.* at 108.) Juror No. 12 further stated that his observation would affect his ability to be fair and impartial because he felt "they were coaching the witness." (*Id.* at 109.) Juror No. 12 added that the observation "made me sick to my stomach." (*Id.*)

After the trial court excused Juror No. 12 from chambers, defense counsel again moved for a mistrial. (*Id.* at 109-110.) In denying the motion, the trial court explained that:

> [o]nly four people said they saw something. All three of them indicated it had no effect on them, that they could be fair and impartial, except the last one. There's only one person that said he felt it made him sick to his stomach, and we're talking about nodding and smiling. That's what the behavior was.

*Id.* at 111.

Subsequently, the trial court **voir dired** Juror No. 13, an alternate, who stated, among other things, that he[4] had followed the trial court's final instructions to the jury, was able to proceed as an impartial and unbiased juror, and did not observe any behavior in the audience. (Notes of

---

[3] A reading of the transcript reveals that Juror No. 12's gender is male.

[4] A reading of the transcript reveals that Juror No. 13's gender is male.

testimony, 5/4/16 at 12-13.)  The trial court then removed Juror No. 12 and replaced him with Juror No 13.  (**Id.** at 13-14.)  The trial court then instructed the reconstituted jury to disregard past deliberations and start deliberations anew.  (**Id.** at 14-15.)

Appellant complains that the trial court abused its discretion in denying his motion for a mistrial because "prejudice was established, and it was too late for effective curative action or remedy" because he could not cross-examine A.G. with respect to the alleged spectator coaching. (Appellant's brief at 24-26.)  In order to establish prejudice, however, appellant must demonstrate that he was denied a fair trial.  **See Sanchez**, 36 A.3d at 47.  Stated differently, appellant's bald assertion that "prejudice was established" is not enough; rather, appellant must show how the trial court's remedy of replacing Juror No. 12 with Juror No. 13 denied him a fair trial.  Appellant has failed to do so.

The record clearly reflects that three of the four jurors who observed spectator behavior stated that their observations would not affect their ability to be fair and impartial.  (**Id.** at 102-103, 105-107.)  Only Juror No. 12 stated that he could not be fair and impartial.  (**Id.** at 108.) The trial court properly excused Juror No. 12 who stated that he could not be fair and impartial and replaced him with Juror No. 13 who, during **voir dire**, stated that he was able to proceed as an impartial and unbiased

juror and that he did not observe any behavior in the audience. (Notes of testimony, 5/4/16 at 12-13.) We find no abuse of discretion.

Appellant next complains that the trial court abused its discretion when it excused Juror No. 12 and impaneled Juror No. 13. In his brief, appellant attempts to raise five claims of error in this regard. First, appellant claims that the trial court violated "standards and procedures [that] have been developed in Pennsylvania to insure the integrity of the jury function when replacing a deliberating juror"; specifically, Pa.R.Crim.P. 645 (seating and retention of alternate jurors). (Appellant's brief at 29, 31-32 (unnecessary capitalization omitted).) Second, appellant claims that "the trial court failed to establish that Juror Twelve could not continue deliberations, or that he was otherwise disqualified and needed to be replaced." (*Id.* at 32 (unnecessary capitalization omitted).) Third, appellant claims that "the trial court failed to insure that the alternate juror called to replace Juror Twelve had not been exposed to any improper outside influence or that the remaining jurors could begin deliberations anew." (*Id.* at 35 (unnecessary capitalization omitted).) Fourth, appellant claims that "the trial court failed to properly instruct the reconstituted juror." (*Id.* at 36 (unnecessary capitalization omitted).) Finally, appellant claims that "removing Juror Twelve because of his reaction to witness coaching further compounded the prejudicial errors created by spectator misconduct and violated the integrity of the jury function." (*Id.* at 38 (unnecessary capitalization omitted).)

The record reflects that after the jury informed the trial court of spectator behavior during A.G.'s testimony, appellant moved for a mistrial several times. (Notes of testimony, 5/3/18 at 94, 109-110, 113; 5/4/16 at 9, 17). Appellant also made a motion to retain Juror No. 12 because "you can't effectively restart deliberations." (Notes of testimony 5/4/16 at 9.) Appellant further argued that because the "truth-determining process has been tainted" by the spectator misconduct, "a mistrial is required." (**Id.** at 11.) In his post-sentence motion, appellant raised the following issue with respect to Juror No. 12: "It was error and an abuse of discretion to dismiss juror number twelve (12), who said that the coaching made him sick to his stomach." (Appellant's post-sentence motion, 9/1/16 at 1.) Therefore, with respect to Juror No. 12's dismissal, the issue that appellant arguably preserved below is that the trial court abused its discretion because it "failed to establish that Juror Twelve could not continue deliberations, or that he was otherwise disqualified and needed to be replaced." (Appellant's brief at 32 (unnecessary capitalization omitted).) Appellant waives the remaining claims that he attempts to raise within this issue for failure to preserve them below. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

That being said, our resolution of appellant's first issue, above, necessarily resolves appellant's claim of error with respect to removal of Juror No. 12. To be clear, though, we note that:

> [t]he decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. This discretion exists even after the jury has been [e]mpanelled and the juror sworn. Our Supreme Court explained that a finding regarding a venireman's impartiality is based upon determinations of demeanor and credibility that are peculiarly within a trial [court]'s province. . . . [Its] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record. It is the appellant's burden to show that the jury was not impartial. Further, this Court has found that per se prejudice does not result where a juror becomes upset during the trial.

*Commonwealth v. Rush*, 162 A.3d 530, 537 (Pa.Super. 2017), *appeal denied*, 170 A.3d 1049 (Pa. 2017) (citations, emphasis, and quotation marks omitted).

Here, when the trial court asked Juror 12 what he had observed, the following took place:

> JUROR [NO. 12]:  I seen [sic] the two ladies that were sitting right here, and they were -- when the victim was on the stand, they were saying yes and no.
>
> THE COURT:  You could hear --
>
> JUROR [NO. 12]:  They were shaking their head[s].
>
> THE COURT:  Okay.  Anything else?
>
> JUROR [NO. 12]:  That was it.
>
> THE COURT:  Would that affect your ability to continue deliberations and be fair and impartial as a juror?

JUROR [NO. 12]:  Yes, ma'am.

THE COURT:  It would?

JUROR [NO. 12]:  Yes, ma'am.

THE COURT:  It would affect you?

JUROR [NO. 12]:  Yes, ma'am.

THE COURT:  How would it affect you?

JUROR [NO 12]:  I felt that they were -- that they were coaching the witness.  It kind of made me sick to my stomach.

Notes of testimony, 5/3/16 at 108-109.

Undoubtedly, the record belies appellant's claim that the trial court failed to establish that Juror No. 12  could not continue with deliberations or that he was otherwise disqualified and needed to be replaced. The record clearly demonstrates that Juror No. 12 stated that as a result of his observations, he could not continue deliberating and that he could not be fair and impartial.  The trial court did not abuse its discretion when it discharged Juror No. 12.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/7/19