NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0350n.06

**Case No. 13-3540**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 01, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CRAIG TAPKE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| TIM BRUNSMAN, Warden, | ) | DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE: MOORE and COLE, Circuit Judges; and DRAIN, District Judge.[*]

COLE, Circuit Judge. An Ohio jury convicted Craig Tapke of repeatedly raping and sexually violating his former girlfriend's daughter, D.S., who was around seven years old when the abuse began. The state trial court sentenced Tapke to life in prison. This appeal presents one question from Tapke's habeas petition attacking his conviction: did the admission of a report containing double hearsay violate Tapke's Confrontation Clause rights? The state appellate court analyzed only the out-of-court statements made by the initial declarant, who testified at trial, and found no violation. Because there could be fairminded disagreement about whether the statements made at each level of hearsay were testimonial, the state court's decision was not an

_____

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

objectively unreasonable application of clearly established federal law, as determined by the Supreme Court. We therefore affirm the district court's decision denying Tapke's petition.

## I. BACKGROUND

In March 2005, twelve-year-old D.S. told her mother that Craig Tapke had raped and molested her for several years. Tapke had lived with the two for a few years before March 2003 and spent time with D.S. on a couple of occasions after that. The next day, D.S.'s mother called the police and took D.S. to Cincinnati Children's Hospital Medical Center. At the hospital's emergency room, a social worker recorded a detailed history of D.S's sexual abuse, and a physician examined D.S. The physician referred D.S. to the hospital's Mayerson Center, a unit that specializes in caring for child-sex-abuse victims. At the Mayerson Center the following day, the social worker again interviewed D.S. to record a detailed history of the abuse, and the center's medical director examined her.

The social worker summarized each interview in separate reports. The first day's report described the portion of the interview about events on November 20, 2004, as follows:

> Pt states the abuse started again when she would go on weekend visits [with] her younger sister. Pt stated Craig is her younger sister's dad. Pt states the same thing would happen; Craig would put his fingers in her privates, then put his private in her private. Pt states she recalls times that when "Craig lived [with] his mom he had jelly stuff that he would put on his fingers before putting in my privates." Pt states many times her privates would hurt and she felt like she had to pee. Pt states when she would go pee her legs would be wet.

> Pt states the last incident happened about 6 [months] ago when she went on a visit [with] her sister. Pt states she was in the bed [with] her sister, Craig was on the floor. Pt states Craig woke her up and put his hands in her privates. Pt stated she heard a wrapper[,] Craig went to the bathroom, came back and told pt "don't worry it's just a condom." Pt stated she was able to wedge herself between the wall and her sister and "nothing else happened."

The second day's report described statements D.S. made during the second interview about these events in the following way:

> Pt reports they moved out of Cheviot and Craig moved in with his mother. Pt reports she would go on weekend visits with her sister, [redacted], to visit Craig. Pt states he would do the same thing to her at this house too. Pt clarified by stating he would put his fingers in her crotch, and put his penis in her crotch and butt. Pt states the last incident was about 6 months ago. Pt states she was sleeping in the bed with her sister [redacted], Craig was on the floor. Pt states her sister was sleeping, and Craig pulled pt towards him. Pt described that Craig put jelly on his fingers then put his fingers in her crotch. Pt reports she then heard a wrapper, Craig got up and went [to] the bathroom, and when he returned he told her not to worry it was a condom. Pt states she wedged herself between the wall and her sister and nothing else happened.

Both reports also contained descriptions of D.S.'s statements about abuse that occurred before 2004.

The police questioned Tapke a few days later. At the Hamilton County Sheriff's Office, Tapke signed a waiver and made a tape-recorded statement about the following:

> Tapke [stated] that on November 20, 2004, D.S. and his daughter had visited him at his residence. During the afternoon, he had agreed to take a nap with D.S. He stated that they had gone upstairs to his room and lain down on his bed, and that then he had put his hand on her belly region. He said that she had scooted up so that his hand had gone down her pants and touched her "privates." He said that "privates" meant vagina. He also said that she had touched his penis. He admitted to having an erection. He then stated that he went to the bathroom and put on a condom because he was afraid that his body fluids would get on D.S. He said that he lay back down on the bed but became uncomfortable and left. He denied any penetration.

*State v. Tapke*, No. C-060494, 2007 WL 2812310, at *2 (Ohio Ct. App. Sept. 28, 2007). Tapke was indicted on five counts: (1) rape for conduct occurring between January 2000 and March 2003; (2) rape for conduct occurring on August 7, 2003; (3) rape for conduct occurring on November 20, 2004; (4) gross sexual imposition for conduct occurring on November 20, 2004; and (5) gross sexual imposition for conduct occurring on November 20, 2004.

At trial, D.S. testified about the sexual abuse she suffered from Tapke while he lived with her and her mother before March 2003. She also testified about an alleged rape by Tapke on August 7, 2003. D.S. testified that she could not remember, however, whether Tapke had sexual

contact with her on November 20, 2004. The state tried to refresh her recollection by having D.S. review a portion of the social worker's reports summarizing her statements, but D.S. still could not recall whether Tapke had sexually touched her on November 20.

Later at trial, the Mayerson Center's medical director testified and authenticated D.S.'s medical records, which included the social worker's reports. The state also called D.S.'s mother and two detectives as witnesses, and it played the audio recording of Tapke's statement. At the close of the state's case, the court admitted the social worker's reports into evidence over Tapke's general objection. Tapke, an expert social psychologist, Tapke's mother, and Tapke's sister testified in Tapke's defense. The social worker did not testify at trial, and Tapke had no prior opportunity to cross-examine her.

A jury convicted Tapke of all counts but the second, which had charged Tapke for a rape that allegedly occurred on August 7, 2003. Tapke directly appealed to the Ohio First District Court of Appeals, which affirmed the convictions on September 28, 2007. *Tapke*, 2007 WL 2812310, at *17. The Supreme Court of Ohio declined to accept Tapke's appeal for review. *State v. Tapke*, 880 N.E.2d 484 (Ohio 2008) (unpublished table decision).

Tapke filed a timely petition for a writ of habeas corpus in the federal district court. The magistrate judge recommended denial of the petition in its entirety. The district court adopted the magistrate judge's recommendation on five of the six claimed grounds for relief, but the court wrote to explain its distinct views on Tapke's Confrontation Clause claim, which it still ultimately denied. On this issue, however, the court granted Tapke a certificate of appealability, and Tapke timely appealed to this court. We have jurisdiction to hear his appeal under 28 U.S.C. § 2253(a).

## II. ANALYSIS

### A.       Standard of Review

Tapke's habeas petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, we review the district court's conclusions on issues of law de novo and its factual findings for clear error. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc).  Relevant to this appeal, AEDPA requires us to deny habeas relief with respect to any federal constitutional claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to" or involved an "unreasonable application of" clearly established federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).

Identifying clearly established federal law is the "threshold question under AEDPA." *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  For purposes of § 2254(d), clearly established federal law includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (internal quotation marks omitted).  The relevant state-court decision is the last state-court adjudication on the merits. *Greene v. Fisher*, 132 S. Ct. 38, 43–44 (2011).

A state court's decision is "contrary to" clearly established federal law "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13.  An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The central inquiry is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Id.* at 410.  "Even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Rather, habeas relief is warranted only when a prisoner shows that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. Nevertheless, "deference does not imply abandonment or abdication of judicial review" nor "by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### B. Confrontation Clause

We may evaluate the Ohio Court of Appeals' decision only by looking to the clearly established federal law as of September 2007, when the court rendered its decision. *See Carey*, 549 U.S. at 74. At that time, the Supreme Court's relevant Confrontation Clause precedents were *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006). *Crawford* held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54. The holdings of *Davis* identified, "[w]ithout attempting to produce an exhaustive classification," types of statements that are testimonial and nontestimonial. 547 U.S. at 822. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* Statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

It is clear that the Ohio Court of Appeals' decision was not "contrary to" the holdings of *Crawford* or *Davis* because the present case does not involve facts materially indistinguishable from those of *Crawford* or *Davis*. *See Williams*, 529 U.S. at 412–13.

Nor, given the Supreme Court's habeas jurisprudence, was the state court's decision an "unreasonable application of" the holdings of *Crawford* and *Davis*. The Court recently explained that § 2254(d)(1) "provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* this Court's precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. ---, 2014 WL 1612424, at *8 (Apr. 23, 2014). In other words, "if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established . . . ." *Id.* at *8 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)) (internal quotation marks omitted). While "the difference between applying a rule and extending it is not always clear," "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Yarborough*, 541 U.S. at 666. "The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 2014 WL 1612424, at *8 (quoting *Harrington*, 131 S. Ct. at 786).

It is not "so obvious" that *Crawford* and *Davis* required the state court to find that admission of the social worker's report violated Tapke's right to confront "those who bear testimony" against him. *See Crawford*, 541 U.S. at 51. The report contained double hearsay: D.S.'s out-of-court statements to the social worker, and the social worker's out-of-court statements summarizing D.S.'s statements. Tapke argues that the first-level hearsay statements

(D.S. to the social worker) are testimonial. On direct review, we might agree. *See Tapke v. Brunsman*, No. 1:09-cv-77, 2013 WL 1315032, at *5, 7 n.2 & n.3 (S.D. Ohio Mar. 29, 2013) (likening this case to *United States v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005), and *Bobadilla v. Carlson*, 575 F.3d 785 (8th Cir. 2009), which applied *Crawford* and *Davis* to find that a child abuse victim's statements to a forensic interviewer were testimonial). But under habeas review, we cannot find the state court in error. In *Davis*, the statements found to be testimonial were only those in which "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. The state court found D.S.'s statements to be nontestimonial because, in its view, the primary purpose of the social worker's interview was to assist doctors in their medical examination of D.S. *See Tapke*, 2007 WL 2812310, at *12. The holdings of *Crawford* and *Davis* do not compel a contrary conclusion. Moreover, as the state court recognized, D.S. was available for cross-examination at trial, so her out-of-court statements present no Confrontation Clause problem. *See Crawford*, 541 U.S. at 53–54.

Whether the second-level hearsay statements (the social worker's summaries of D.S.'s statements) are also nontestimonial is a closer question and complicated by the fact that the state court erroneously decided that it could "review the sentences in the report that begin with 'Patient states' as out-of-court statements made by D.S., not by the social worker." *Tapke*, 2007 WL 2812310, at *11. The state court did not cite any authority for its conclusion, and we doubt that any exists. The fact that the social worker prefaced each sentence with "Patient states" means little; the report summarizes, edits, and interprets the child's statements, meaning that it bears the testimony of the social worker. *See Crawford*, 541 U.S. at 51. Any novice student of evidence would know that the social worker qualifies as a declarant. *See* Fed. R. Evid. 801(b)

(defining a declarant as "the person who made the statement"); Ohio R. Evid. 801(B) (defining a declarant as "a person who makes a statement"); *cf. Reynolds v. Green*, 184 F.3d 589, 596 (6th Cir. 1999) ("'[H]earsay within hearsay' is inadmissible unless both levels of hearsay fall within an exception to the hearsay rule."). Thus, the state court was wrong to analyze only whether the child's statements were testimonial.

This mistaken understanding of basic evidentiary law by itself, however, is not enough to trigger a violation of the Confrontation Clause. The state court's decision offends the Constitution only if the social worker's report was testimonial. Even though the state court provided no direct analysis on this question, under AEDPA we must entertain and accept any reasonable argument that supports the state court's conclusion that the primary purpose of the report was not "to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822; *see also Richter*, 131 S. Ct. at 784. In this case, the state court found that the primary purpose of the report was to assist the doctors in providing D.S. with medical care. Again, on a direct appeal, we likely would agree with Tapke and the district court that the evidence supports a different finding and that these statements are testimonial. *See Tapke*, 2013 WL 1315032, at *7 n.4. But we cannot say that the evidence supports only a contrary conclusion. There can be "fairminded disagreement" about whether the second-level statements are testimonial. Such disagreement alone precludes habeas relief. *White*, 2014 WL 1612424, at *8.

Tapke also makes arguments relying in various ways on *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Jones v. Basinger*, 635 F.3d 1030 (7th Cir. 2011); and *United States v. McKinney*, 707 F.2d 381 (9th Cir. 1983). We may not consult these cases in assessing Tapke's habeas claim. The first two occurred after

the relevant state-court decision, and thus do not constitute "clearly established federal law" for purposes of § 2254(d). *Carey*, 549 U.S. at 74. With respect to the last two, we "may not consult [our] own precedents, rather than those of [the Supreme] Court, in assessing a habeas claim governed by § 2254," so it is unlikely that we may consult the precedents of our sister circuits. *White*, 2014 WL 1612424, at *5 (quoting *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)) (internal quotation marks omitted).

The appropriate inquiry under AEDPA is "not whether a federal court believes a state court's determination . . . was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Tapke has not cleared this threshold: the Ohio Court of Appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786–87.

### III. CONCLUSION

The district court's denial of Tapke's petition for a writ of habeas corpus is affirmed.