**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PAUL ANDY TURNER,
*Petitioner-Appellant*,

v.

L. S. McEWEN, Warden,
*Respondent-Appellee.*

No. 13-56385

D.C. No.
5:11-cv-02069-VAP-JCG

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
March 11, 2016—Pasadena, California

Filed April 14, 2016

Before: Richard R. Clifton, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's denial of California state prisoner Paul Andy Turner's habeas corpus petition challenging his conviction for attempted carjacking, in a case in which Turner claimed that jurors' observation of a spectator directing the victim's testimony at trial constituted consideration of extrinsic evidence or extraneous information, or otherwise violated his Sixth Amendment right to a fair trial.

The panel held that the California Court of Appeal, which decided that juror misconduct did not occur in this case, could not have unreasonably applied clearly established federal law, given the lack of holdings from the Supreme Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here. The panel wrote that the general principles that a jury decides a case based on the evidence produced at trial, and that the rights of confrontation and cross-examination are fundamental to a fair trial, are not sufficient to support a conclusion that the California Court of Appeal unreasonably applied clearly established Supreme Court precedent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Hilary Potashner, Federal Public Defender, and Kathryn Ann Young (argued), Deputy Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

Kamala D. Harris, Attorney General of California, Julie L. Garland, Senior Assistant Attorney General, and David Delgado-Rucci and Neru Joy Utomi (argued), Deputy Attorneys General, San Diego, California, for Respondent-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

Petitioner Paul Andy Turner was convicted of attempted carjacking following a jury trial in a California state court. The victim identified him in a photographic lineup shortly after the crime. At trial, however, the victim professed not to be able to identify Turner and testified that he was drunk and angry at the time of the initial identification. While he testified, a woman sat as a spectator shaking her head. Some of the jurors observed that action, and later said that they believed that the woman was the victim's mother and that she was directing him not to identify Turner. Neither the trial judge nor the attorneys noticed the woman's actions at the time. After the jury returned a guilty verdict, the trial court denied Turner's motion for a new trial, and the conviction was affirmed on appeal. Turner sought habeas relief in federal court, contending, among other arguments, that his conviction was tainted because the jurors' verdict was

influenced by something other than evidence admitted during the trial. This district court dismissed Turner's petition.

The central issue before us is whether the decision of the California Court of Appeal rejecting Turner's claim is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court. We conclude that there is no clearly established Supreme Court precedent that speaks to Turner's claim and therefore affirm the district court's denial of Turner's habeas petition.

## I.  Background

On September 11, 2006, after a night with friends at a dance club in San Bernardino, Tillford Smith stopped to eat at a Denny's Restaurant in Colton, California. As he left the restaurant, he was approached by a man with a gun. Smith punched the man, and the man shot him in the shin and thigh.

Smith was taken to an emergency room, where Police Corporal Henry Dominguez showed him a photographic lineup. Smith identified Turner as his assailant. Smith told Corporal Dominguez that Turner had approached him with a gun, asked him for his car keys, and shot him following a tussle. Smith also identified a man that he had seen with Turner in the restaurant prior to the incident. According to Corporal Dominguez, Smith seemed angry and smelled of alcohol during their conversation, but was cooperative and coherent.

Turner was ultimately arrested for the crime. He was tried in April 2008 on two charges: attempted carjacking (Cal.

Penal Code §§ 664, 215(a)) and second degree robbery (Cal. Penal Code § 211).

At trial, Smith testified that he could not recognize the man who shot him because two years had passed and he had been drunk at the time of the incident. When presented with the photographic lineup he had seen the day of the shooting, Smith denied that his assailant was pictured. Smith also testified that he did not remember telling Corporal Dominguez about seeing another person with his assailant and did not remember identifying this person in a lineup. Smith indicated that he did not really remember Corporal Dominguez, either. He testified that his state of mind was not "very good" at the time of his conversation with Corporal Dominguez, explaining that he was drunk, angry, and his adrenaline was pumping.

Turner was convicted of attempted carjacking, with a finding that he personally discharged a firearm, causing great bodily injury (Cal. Penal Code § 12022.53(d)).[1] The jury was unable to reach a verdict on the second degree robbery charge, and that count was dismissed.

Following the verdict, counsel for both sides spoke with some of the jurors about the case. When asked about their impression of Smith's testimony, some of them stated that

---

[1] Evidence in addition to Smith's photographic lineup identification was presented against Turner at trial. Turner does not challenge his conviction on the ground that the evidence was insufficient to support a verdict, *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), but he does argue that the other evidence was not strong enough to support a verdict independent of Smith's identification, disputing that any error might have been harmless. In light of our resolution of his primary claim, it is not necessary for us to evaluate the strength of the other evidence.

they saw a woman in the audience they believed to be
Smith's mother shaking her head while Smith was being
asked to identify Turner in a photo lineup. The jurors
interpreted this as Smith's mother directing him not to
identify Turner. The jurors indicated that this incident
affected their assessment of Smith's credibility.

In response, Turner requested that the trial court release
information about the jurors so that a defense investigator
could contact them. The trial court denied the request,
concluding that a prima facie case for release of the
information had not been established. The trial court noted
that the parties were willing to stipulate as to what the jurors
conveyed to counsel following the trial, such that "any further
information from jurors would either only corroborate that
and would be unnecessary, or would lead to what may have
happened during jury deliberations," which would be
inadmissible.

The parties did in fact stipulate as to information received
from the jurors. The stipulation stated:

> 1) After the jury returned a verdict in the
> above-referenced case, the Deputy District
> Attorney assigned to this case and counsel for
> defendant spoke to some of the jurors
> regarding the case;
>
> 2) When asked about their impression of the
> testimony of Joel Tillford Smith, the
> complaining witness in count 2, several of the
> jurors remarked that they saw a person who
> they believed was Mr. Smith's mother

shaking her head as if she were directing Mr. Smiths's [sic] testimony;

3) The jurors said that this happened when Mr. Smith was being asked to pick the defendant out of a photo lineup shown to him by the prosecutor during the trial;

4) The jurors said that they believed that she was directing the witness to not identify the defendant.

Turner filed a motion for a new trial. He argued that he was entitled to a new trial based on the jury's receipt of evidence out of court and juror misconduct. The trial court denied Turner's motion, explaining that the alleged conduct occurred in open court while a witness was testifying. The jurors' observations that a spectator may have been directing a witness's testimony were, according to the trial court, "appropriate in assessing the overall credibility and believability of the witness." The trial court also noted that the jurors had no obligation to report their observations given that they were made in open court while testimony was underway.

Following the denial of his motion for a new trial, Turner was sentenced to four years and six months for the attempted carjacking, plus 25 years to life for the section 12022.53(d) weapons-use enhancement.

Turner appealed. His arguments included contentions that his constitutional rights were violated by: (1) juror misconduct; (2) the trial court's failure to conduct an evidentiary hearing on his motion for a new trial; (3) the trial

court's denial of his motion to release juror information; and
(4) spectator misconduct. The California Court of Appeal
affirmed.

With respect to Turner's juror misconduct argument, the
Court of Appeal noted:

> While it is clearly misconduct for a juror to
> bring independently obtained evidence that
> was not presented at trial into deliberations,
> we are unaware of any case that holds it is
> misconduct for a juror to pay attention in the
> courtroom or to discuss during deliberations
> the juror's observations in the courtroom.

The court viewed the alleged misconduct as "no different
than a juror expressing to other jurors that a witness looked
like he was lying." The conduct observed "occurred in open
court and [was] subject to contradiction or qualification by
the other jurors." The court also stated that:

> The jurors could not be expected to recognize
> that these actions should be ignored when the
> trial court and parties (who did not see the
> woman's actions) said nothing about her
> behavior. Having been instructed that they
> could consider anything in determining the
> witness's credibility, including the witness's
> demeanor while testifying, they certainly did
> not commit misconduct by considering the
> woman's actions and its impact on Smith's
> testimony. We might hold differently if the
> trial court were to have admonished the jurors
> to ignore the woman's gestures and they

disregarded the admonition, but in this case, the jurors did not commit misconduct by following the trial court's given instructions.

With respect to whether the jurors' observations prejudiced Turner, the California Court of Appeal concluded that there had been no showing of inherent bias or a substantial likelihood of juror bias. The court stated that:

> The information the jurors received was something that the jurors already knew or should have known: Smith clearly had changed his story by the time of trial. The jurors were well aware that something, or someone, could have been influencing Smith to change his identification of defendant at trial. The prosecutor suggested in closing argument that it was because Smith was afraid. The fact that the jurors may have also believed that Smith was told by his family not to identify defendant presented a different explanation for Smith's recanting at trial. However, this did not impart any new information pertinent to defendant's conviction and did not show bias on behalf of the jurors.

The court also stated that Corporal Dominguez had testified credibly and that there was other evidence to support the jury's verdict in the record.

Turner filed a petition for review with the California Supreme Court. The petition for review was denied without comment.

Turner then filed a habeas corpus petition under 28 U.S.C. § 2254 in federal district court. The magistrate judge recommended denial of the petition and dismissal of the action with prejudice. With respect to Turner's juror misconduct claim, the magistrate judge concluded, as had the California Court of Appeal, that there was no substantial likelihood of juror bias because the jury's observation of the spectator did not provide it with any new information relevant to the conviction. The magistrate judge also noted that the California Court of Appeal reasonably found that evidence unrelated to Smith's testimony supported the jury's verdict.

The district judge approved and accepted the magistrate judge's Report and Recommendation. The district court entered judgment denying Turner's petition and dismissing his action with prejudice. The district court declined to issue a certificate of appealability. Turner filed a notice of appeal.

This court granted Turner's request for a certificate of appealability on the claim that the jurors' observation of a spectator directing a witness's testimony constituted consideration of "extrinsic evidence" or "extraneous information," or otherwise violated Turner's Sixth Amendment right to a fair trial.

## II.  Discussion

We review a district court's denial of a habeas petition under 28 U.S.C. § 2254 de novo. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*,

537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).  Under AEDPA, habeas relief may be awarded only if the last reasoned state court decision on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta" of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  If Supreme Court precedent does not provide a "clear answer to the question presented," the state court's decision cannot be contrary to, or have unreasonably applied, clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

We conclude that to be the situation here.  There is no clearly established federal law sufficiently related to the facts of Turner's case upon which he can rely to support his claim.

*Carey v. Musladin*, 549 U.S. 70 (2006), makes that clear. Musladin was charged and convicted of first degree murder. He claimed that he was denied a fair trial because members

of the victim's family wore buttons displaying the victim's picture on them while sitting in the spectator gallery during the trial. *Id*. at 72. The Supreme Court rejected our court's conclusion that the state court's decision denying Musladin's claim was contrary to, and an unreasonable application of, clearly established federal law. *Id.* at 74, 77. This court had held that *Williams v. Taylor*, 529 U.S. 362 (2000), and *Holbrook v. Flynn*, 475 U.S. 560 (1986), constituted clearly established law regarding inherent prejudice that the state court failed to apply to Musladin's case. The Supreme Court disagreed with our court's assessment, concluding that *Williams*, which addressed a requirement that a defendant appear at trial in prison clothing, and *Flynn*, which concerned uniformed state troopers sitting in the courtroom during trial, involved circumstances unlike those presented in Musladin's case because those cases "dealt with government-sponsored practices." *Musladin*, 549 U.S. at 75. The spectators whose conduct was the subject of Musladin's complaint were private citizens. That was different, according to the Court:

> In contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of the spectator conduct to which Musladin objects is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial. And although the Court articulated the test for inherent prejudice that applies to state conduct in *Williams* and *Flynn*, we have never applied that test to spectators' conduct.

*Id.* at 76 (footnote omitted).

Turner's claim is essentially the same. The spectator about whom he complains, Smith's mother, was a private actor like the button-wearing spectators in Musladin's trial. Turner expresses his claim in terms of the impact on the jury rather than the conduct of the spectators, but that is the same claim repackaged in different wrapping paper. Spectator conduct is relevant to a defendant's right to a fair trial because of its potential effect on the jury. Turner's claim that his jury was improperly influenced by the actions of Smith's mother is at its core identical to Musladin's claim that his jury was improperly influenced by the buttons worn by the relatives of his victim. *Musladin* establishes that the Supreme Court has not clearly spoken on such claims.

Turner attempts to distinguish *Musladin* by arguing that it was limited to considering whether "private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." *Id*. Turner argues that his case involved not just inherent prejudice but actual prejudice. It is not clear that *Musladin* was so limited, as it spoke not just of inherent prejudice but also of the "potentially prejudicial effect" of spectator conduct. *Id*. at 77.

More importantly, Turner cannot identify a Supreme Court decision that established law in contradiction to the California Court of Appeal's conclusion that the jurors' consideration of the spectator's actions was not misconduct in the first place. The California court accepted the proposition that "[a] juror who consciously receives outside information regarding the case . . . commits misconduct." But it did not view the spectator's actions as something that was "outside," as it took place in the courtroom and was something the jurors could properly observe. As the

California court stated, it was "unaware of any case that holds it is misconduct for a juror to pay attention in the courtroom." Turner has failed to identify a Supreme Court decision to the contrary.

Instead, Turner points to other Supreme Court cases that he argues establish the more general principle that a jury may rely only on evidence presented at trial in reaching its verdict. In *Turner v. Louisiana*, 379 U.S. 466 (1965), for instance, the Court stated that:

> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.

*Id.* at 472–73. In the Court's view, "[t]he requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Id.* at 472 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). Turner contends that the California Court of Appeal, in rejecting his juror misconduct claim, unreasonably applied that clearly established principle.

*Turner v. Louisiana* involved contacts with jurors outside the courtroom, however. The problem in that case was that a sequestered jury was placed in the custody of deputy sheriffs who maintained a "close and continual association with the jurors." *Id.* at 468. Those deputies included two

who were key witnesses at trial. The Court recognized "the potentialities of what went on outside the courtroom during the three days of the trial." *Id*. at 473.

The claim presented to us in the current case is different from that. There is no claim of contact or influence with the jury outside the courtroom. The objection is focused entirely on the in-courtroom conduct of the woman believed to be Smith's mother, shaking her head while Smith testified. The California court expressly drew a distinction between what happened inside the courtroom and precedents regarding what happened outside. If "state-sponsored" actions within a courtroom such as those at issue in *Williams* and *Flynn* were too dissimilar to establish law applicable to conduct by private actors in the courtroom, as the Court held in *Musladin*, then cases regarding actions outside the courtroom, such as *Turner v. Louisiana*, cannot suffice to constitute clearly established law applicable to this situation, either.

The Supreme Court has repeatedly warned against applying its precedents at too high a level of generality in determining whether a state court's decision unreasonably applied clearly established federal law. *See, e.g.*, *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) ("By framing our precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))). Turner's argument is premised on the kind of generality we are to avoid. The Supreme Court precedents he cites do not "squarely address[] the issue in this case" or give a "clear answer to the question presented." *Van Patten*, 552 U.S. at 125, 126.

## III.    Conclusion

The California Court of Appeal's decision in Turner's case could not have unreasonably applied clearly established federal law "[g]iven the lack of holdings from [the Supreme] Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here." *Musladin*, 549 U.S. at 77.  The general principles that a jury decides a case based on the evidence produced at trial, and that the rights of confrontation and cross-examination are fundamental to a fair trial, are not sufficient to support a conclusion that the California Court of Appeal unreasonably applied clearly established Supreme Court precedent in concluding that juror misconduct did not occur in this case. For that reason, we must affirm the district court's denial of habeas relief.[2]

**AFFIRMED.**

---

[2] Turner has briefed other issues as to which he has not been given a certificate of appealability.  This court construes that briefing as a request to expand the scope of the certificate of appealability.  *Delgadillo v. Woodford*, 527 F.3d 919, 930 (9th Cir. 2008); Ninth Circuit Rule 22-1(e). To expand the certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), accomplished by "demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Turner has failed to make that showing with respect to the uncertified issues he raises and we accordingly decline to expand the certificate of appealability.